IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 25-cv-1002-RMR

ALFREDO MUNOZ RAMIREZ, also known as Dayana Munoz Ramirez,

    Petitioner,

v.

PAMELA BONDI, in her official capacity as Attorney General of the United States,
ROBERT GUADIAN, in his official capacity as Field Office Director, Denver, U.S. Immigration and Customs Enforcement,
KRISTI NOEM, in her official capacity as Secretary, U.S. Department of Homeland Security,
TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement, and
DAWN CEJA, in her official capacity as warden of the Aurora Contract Detention Facility,

    Respondents.

---

# ORDER
---

    This matter is before the Court on the Petition for Writ of Habeas Corpus, ECF No. 1, and Petitioner's Motion for Temporary Restraining Order, ECF No. 2. Respondents have filed a response, ECF No. 10, and Petitioner has replied, ECF No. 11. The Court has reviewed the Petition, the Motion, and the related briefing, and the applicable case law. No party has requested a hearing on the matter, and the Court finds that oral argument would not materially assist in the resolution of these matters. For the following reasons, the Petition for Writ of Habeas Corpus is GRANTED IN PART AND DENIED IN PART and the Motion for Temporary Restraining Order is DENIED AS MOOT.

## I.     BACKGROUND[1]

Petitioner Dayana Munoz Ramirez ("Petitioner") is a transgender woman from El Salvador.[2] Petitioner first entered the United States in 1993, when she was approximately 15 years old. Petitioner knew she was transgender from a young age, but felt compelled to hide her gender identity and pursue relationships with women. In her early 20s, she married a woman and had two children who are now adults.

In 2016, Petitioner was placed in removal proceedings based on a 2006 conviction for unlawful taking of a vehicle. Around this time, she disclosed her gender identity to her family, who stopped speaking to her, and her marriage ended. She did not disclose her gender identity in her removal proceedings and referred to herself by her birth name, Alfredo, and used he/him pronouns. The Immigration Judge ("IJ") denied her applications for relief, ordered removal, and in December 2016 she was removed to El Salvador.

After her removal to El Salvador, Petitioner began living openly as transgender and publicly identifying as a woman. During her time in El Salvador, she faced physical beatings, sexual assaults, and threats to her life at the hands of gang members and police officers who targeted her because of her feminine appearance and transgender identity. Gang members threatened to extort her and then kidnapped and raped her.

Around May 2019, fearing for her life, Petitioner fled El Salvador and reentered the United States. Around 2020, Petitioner was convicted of car theft. In November 2023, she

---

[1] The Court takes these facts primarily from the Complaint, ECF No. 1, and the Evidence Packet and attached exhibits, ECF No. 1-1.

[2] Petitioner's sex assigned at birth was male and her legal name was Alfredo Munoz Ramirez. Although she has not had the opportunity to legally change her name, Petitioner is a transgender woman and uses the name Dayana and she/her pronouns. The Court refers to her accordingly.

2

was taken into immigration custody at the Aurora detention center and housed in a unit dedicated to transgender people. While in immigration custody, she began gender affirming healthcare in the form of hormone therapy.

### A. Petitioner's Withholding-Only Proceedings

After being placed in ICE custody, Petitioner was referred for a reasonable fear interview, where she demonstrated a reasonable possibility of facing persecution if she returns to El Salvador. Thereafter, she was placed in withholding-only proceeding, wherein she applied for withholding of removal and Convention Against Torture ("CAT") relief. She appeared *pro se* before the Aurora Immigration Court.

At a hearing on April 4, 2024, the IJ notified the parties she was denying relief, and issued a written decision on May 16, 2024. In that decision, the IJ identified 10 factors that, in her view, supported an adverse credibility finding. The IJ denied all relief based on lack of corroboration. The IJ also found Petitioner statutorily barred from withholding of removal, finding that her 2006 conviction for unlawful taking of a vehicle constituted a particularly serious crime. Finally, the IJ denied CAT protection, reasoning that Petitioner had not identified as transgender outside of removal proceedings and did not intend to do so in the future. Petitioner timely appealed the decision to the Board of Immigration Appeals ("BIA") and obtained counsel to assist in filing an appellate brief.

On October 28, 2024, the BIA affirmed the IJ decision over a dissent. The majority opinion found that Petitioner was ineligible for withholding of removal and CAT relief based on the adverse credibility finding. The dissenting Board member stated that she would have reversed and remanded the IJ's decision because "the applicant has shown

3

clear error in several of the central bases for the Immigration Judge's finding that the applicant was not credible," such as the IJ finding implausible "the timing of when the applicant began identifying as transgender" and "the Immigrations Judge's characterization of her use of a chosen name as an inconsistency." ECF No. 1-1 at 438-442.

On November 20, 2024, Petitioner filed a motion to reopen and a motion for emergency stay of removal with the BIA. On November 26, 2024, Petitioner filed a petition for review and a motion for an emergency stay of removal before the Tenth Circuit. *See Munoz-Ramirez v. Bondi*, Case No. 24-9572 (10th Cir. 2024). On December 4, 2024, the BIA granted a stay of removal. The next day, the Tenth Circuit separately granted a stay of removal. Based on her pending motion to reopen before the BIA, Petitioner filed a joint motion to hold the briefing schedule in abeyance before the Tenth Circuit, which was granted.

On March 10, 2025, the BIA issued a decision denying Petitioner's motion to reopen, finding that she had presented "highly material" evidence to her protection claim, including medical records demonstrating her transgender identity, but that she had failed to demonstrate the evidence was previously unavailable and denied the motion to reopen because Petitioner had not demonstrated exceptional circumstances.

On March 26, 2025, Petitioner filed a second petition for review with the Tenth Circuit, appealing the BIA's denial of her motion to reopen and requesting that her petitions be consolidated. On March 27, 2025, the Court consolidated her petitions, lifted

abatement, and ordered that Petitioner file her opening brief 40 days after the Agency Record is filed.

### B. Petitioner's Current Confinement

Petitioner is currently detained at the Denver Contract Detention Facility in Aurora, Colorado (the "Aurora Facility"), where she has been held throughout the entirety of her withholding-only proceedings. Although she is housed in a dedicated transgender unit, she contends that she has endured substantial harm in detention and her continued confinement only increases these dangers. She attests that she faces daily verbal harassment by cisgender men who are detained whenever she leaves her pod, and that these individuals regularly subject her to degrading comments, catcalling, and other forms of harassment that make her feel unsafe in detention. She also states that she has been subjected to threats and intimidation by detention staff.

Petitioner reports that while in detention she has also experienced severe medical neglect related to multiple dental problems and mental health conditions. She states that she has not been able to see a dentist for over a year. Instead, she claims she has been given only pain medication and a gel, which have become ineffective over prolonged use. Petitioner asserts that despite filing multiple medical requests and grievances, her urgent need for medical care remains unaddressed. As to her mental health, Petitioner states she struggles with anxiety and a sleeping disorder, both of which have worsened significantly since her detention. She attests that a recent attempt to treat her anxiety resulted in a prescription of medication at too high a dose, which caused severe side

5

effects. Although the dosage was eventually adjusted, she claims nothing has been done to address the underlying stress and anxiety caused by her detention.

Petitioner also notes that recent policy changes have created additional risks to her safety. She references Executive Order 14166, which directs the Attorney General and Secretary of Homeland Security to ensure that transgender women are removed from women's detention facilities and amends federal regulations to prohibit housing transgender women with cisgender women.[3] Additionally, the Executive Order requires the Bureau of Prisons to revise its policies to eliminate federal funding for gender-affirming medical care in detention. Although Petitioner has not yet been impacted by these policy changes, she asserts that the risk of being transferred to a facility that does not align with her gender identity and losing access to essential medical care is imminent and further underscores the urgent need for her release.

Petitioner claims she has a viable plan for release—H. Casa Marianella, a haven for immigrants in Austin Texas, has agreed to provide Petitioner with access to supportive housing, basic necessities, and connections to social services, including gender-affirming medical care and mental health services. She also intends to comply with all the conditions of her release and attend all future hearings.

On March 28, 2025, Petitioner filed her Petition for Writ of Habeas Corpus, which also states a Fifth Amendment procedural due process claim. In her Petition, Petitioner asserts that she will remain detained for many more months, or potentially years, while

---

[3] https://www.whitehouse.gov/presidential-actions/2025/01/defending-women-from-gender-ideology-extremism-and-restoring-biological-truth-to-the-federal-government/

the Tenth Circuit adjudicates her claims. Moreover, even if she wins her appeal, her case will not be automatically resolved as she will have to wait for remand to the BIA and then ask the BIA to remand her case to the IJ. Accordingly, Petitioner asks the Court to issue a writ of habeas corpus and order her immediate release or, in the alternative, order that Respondents provide her with a bond hearing before an immigration judge ("IJ") within seven days, at which hearing Respondents bear the burden of establishing that continued detention is warranted by clear and convincing evidence.

Petitioner also filed a Motion for Temporary Restraining Order, requesting her immediate release or, in the alternative, that she be presented before a neutral adjudicator within seven days of the Court's order to determine whether her continued detention serves a legitimate purpose. ECF No. 2.

## II.   LEGAL STANDARD

### A.   Habeas Corpus Relief

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus proceedings under 28 U.S.C. § 2241 "remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Singh v. Choate*, No. 23-cv-02069-CNS, 2024 WL 309747, at *1 (D. Colo. Jan. 26, 2024) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)); *see also Hernandez-Ceren v. Wolf*, No. 20-cv-01628-RM, 2020 WL 3036074, at *1 (D. Colo. June 6, 2020) ("[A] person subject to removal is in custody for habeas purposes.").

The writ of habeas corpus is designed to challenge "the fact or duration" of a person's confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). "In other words, habeas corpus, and thus § 2241, offers detainees release from custody when the very fact that they are detained, or detained for a certain length of time, is unlawful." *Codner v. Choate*, No. 20-cv-01050-PAB, 2020 WL 2769938, at *4 (D. Colo. May 27, 2020).

B.     **Post-Removal Detention Under § 1231**

Two sections of the Immigration and Nationalization Act ("INA") authorize detention—8 U.S.C. § 1226, which concerns noncitizens who are not yet subject to a removal order, and 8 U.S.C. § 1231, which operates in the post-removal context. Petitioner is detained pursuant to § 1231. Under § 1231, "when a [noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days." § 1231(a)(1). The noncitizen must be detained during this initial 90-day timeframe, *see* § 1231(a)(2), which is "referred to as the 'removal period,' " § 1231(a)(1)(A). If the noncitizen "does not leave or is not removed within the removal period," then he or she is normally subject to supervised release. § 1231(a)(3). However, certain categories of noncitizens who have been ordered removed—including inadmissible or criminal noncitizens, or noncitizens whom the Attorney General has determined are a risk to the community or are unlikely to comply with the removal order— "may be detained beyond the removal period." § 1231(a)(6). The text of the INA does not contain an express limit on the duration a noncitizen may be detained under its authority.

Separate but closely related, if a noncitizen is found to have reentered the United States illegally after having been removed pursuant to a removal order, the prior removal

8

order "is reinstated from its original date and is not subject to being reopened or reviewed," and the noncitizen "shall be removed under the prior order at any time." § 1231(a)(5). In such cases, while this provision "generally foreclos[es] discretionary relief from the terms of the reinstated order," *Fernandez-Vargas v. Gonzalez*, 548 U.S. 30, 35 (2006), a noncitizen may still "pursu[e] withholding-only relief to prevent DHS from executing his removal to the particular country designated in his reinstated removal order . . . ." *Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2282 (2021).

  C.  **Temporary Restraining Order**

To obtain a temporary restraining order, the moving party must establish "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quotation omitted); *see also Wiechmann v. Ritter*, 44 F. App'x 346, 347 (10th Cir. 2002) (the standard for a temporary restraining order is the same as the standard for a preliminary injunction). A party seeking an injunction must demonstrate that "all four of the equitable factors weigh in its favor," *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013), and a "plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted," *Vill. of Logan v. U.S. Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014).

Certain types of preliminary injunctions, such as injunctions that alter the status quo or injunctions that require the nonmoving party to take some affirmative action, "are disfavored." *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021). To obtain a "disfavored" injunction, the moving party must "make a heightened showing of the four factors." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009); *Colorado v. Griswold*, 99 F.4th 1234, 1240 n.4 (10th Cir. 2024). Because a temporary restraining order is "an extraordinary remedy never awarded as of right," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), the moving party's right to relief must be clear and unequivocal, *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

### III.   ANALYSIS

#### A.   Habeas Relief Under 28 U.S.C. § 2241

First, Petitioner argues that her prolonged detention violates due process. The parties dispute the applicable test for the constitutionality of her detention. Petitioner contends that the Court should apply the six-factor test adopted in *Singh v. Choate*, No. 19-cv-00909-KLM, 2019 WL 3943960, at *5 (D. Colo. Aug. 21, 2019). Respondents contend this test is inappropriate; instead, they urge the Court to analyze Petitioner's detention only under the standard set forth by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

The Court concludes that both tests are relevant to Petitioner's circumstances here and addresses each in turn. For the following reasons, the Court finds that under *Zadvydas*, Petitioner's detention is permissible. However, under *Singh*, Petitioner's prolonged detention without a bond hearing violates the Fifth Amendment's due process

10

guarantees. Accordingly, while Petitioner's immediate release is not warranted, the Court finds that Petitioner is entitled to an individualized bond hearing.

### 1. Detention Under § 1231 and *Zadvydas*

In *Zadvydas*, the U.S. Supreme Court held that the due process clause prohibits the government from detaining immigrants indefinitely. Specifically, the *Zadvydas* Court held that although § 1231(a)(6) does not specify a time limit on how long DHS may detain a noncitizen in the post-removal period, that statute "does not permit indefinite detention." 533 U.S. at 689. Rather, "in light of the Constitution's demands," a noncitizen may be detained only for "a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Id*.; *accord Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022). According to the *Zadvydas* Court, the period reasonably necessary to effect the noncitizen's removal is presumptively six months. *Zadvydas*, 533 U.S. at 701; *see Arteaga-Martinez*, 596 U.S. at 587 (Breyer, J., concurring). However, this presumption does not trigger a per se release of every noncitizen at the six-month mark—"[t]o the contrary, [a noncitizen] may be held in confinement until it has been determined that there is <u>no significant likelihood of removal in the reasonably foreseeable future</u>." *Zadvydas*, 533 U.S. at 701 (emphasis added).

Here, Petitioner has been detained for more than 505 days—nearly three times the presumptive limit set forth in *Zadvydas*. While this is undoubtedly a lengthy confinement, "the concern animating the Supreme Court's decision in *Zadvydas* was not just *prolonged* detention—it was *indefinite* detention of noncitizens who have no prospect of removal at any point in the future." *Juarez v. Choate*, No. 1:24-CV-00419-CNS, 2024

WL 1012912, at *4 (D. Colo. Mar. 8, 2024) (emphasis in original) (citing *Zadvydas*, 533 U.S. at 695). Thus, the question is whether Petitioner's removal is significantly likely in the reasonably foreseeable future. If so, then the Constitution does not require her immediate release.

The Court concludes that Petitioner's removal is reasonably foreseeable because it depends solely on her pending withholding-only proceedings and her Tenth Circuit appeal. Once those proceedings have concluded, she will be either removed or released. *See Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004) (explaining that the detention of a noncitizen during an appeal is "associated with a judicial process that has a definite . . . termination point," and is "neither indefinite nor potentially permanent"); *M.P. v. Joyce, et al.*, No. 1:22-cv-06123, 2023 WL 5521155, at *4 (W.D. La. Aug. 10, 2023) ("[D]etention is neither indefinite nor potentially permanent where the delay in removal is directly attributable to the litigation activity of the [noncitizen]."); *Portillo v. Decker*, No. 21 Civ. 9506, 2022 WL 826941, at *5 (S.D.N.Y. Mar. 18, 2022) ("For obvious reasons, a noncitizen's use of the American judicial process, to the extent it delays removal, does not warrant release under *Zadvydas*."). Accordingly, *Zadvydas* does not require her immediate release.

### 2. Detention Without an Individualized Bond Hearing

While the Court does not find that Petitioner's immediate release is appropriate under *Zadvydas*, the question remains whether her continued detention without an individualized bond hearing violates the Fifth Amendment's due process clause. The Court finds that it does.

It is "well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Indeed, this protection applies to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Id.* at 690. Under these due process principles, civil immigration detention is constitutional only in "certain special and narrow nonpunitive circumstances," and it must "bear a reasonable relation to the purpose" for which the noncitizen was detained. *Id.* (citations, brackets, and quotation marks omitted). The Supreme Court has identified those purposes as mitigating the risk of danger to the community and preventing flight. *Id.* at 690–91; *accord Demore*, 538 U.S. at 527–28. And when a noncitizen's detention becomes unreasonably prolonged in relation to these purposes, his or her continued detention may violate the Fifth Amendment. As such, noncitizens detained under § 1231(a)(6) past the *Zadvydas* six-month presumptively constitutional period may bring an as-applied due process challenge to his or her detention under the statute. *See Arteaga-Martinez*, 596 U.S. at 583.

Here, Petitioner brings an as-applied due process challenge to her detention, arguing that an individualized bond hearing is required. In *Juarez v. Choate*, Judge Sweeney addressed this issue and noted that there is "some ambiguity about the proper framework to analyze Fifth Amendment due process challenges for individuals . . . who

13

are being detained under § 1231(a)(6)." 2024 WL 1012912, at *6. However, after reviewing the case law and the Supreme Court's recent decision in *Arteaga-Martinez,* Judge Sweeney concluded that it is appropriate to examine detention pursuant to § 1231 under the *Singh* six-factor test. *Id.* In reaching this conclusion, Judge Sweeney rejected the same argument Respondents make here, finding that "there appears to be little substantial distinction between the liberty interest of noncitizens detained pursuant to § 1226(c) and § 1231(a)(6), because '[r]egardless of the stage of the proceedings, the same important interest is at stake—freedom from prolonged detention.' " *Id.* (quoting *Guerrero-Sanchez*, 905 F.3d at 222). The Court agrees with Judge Sweeney's reasoning in *Juarez*. Accordingly, the Court will analyze Petitioner's Fifth Amendment due process claim under the *Singh* framework.

Under *Singh*, to determine whether a noncitizen's detention has become so prolonged as to violate due process, courts consider six factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Singh*, 2019 WL 3943960, at *5.

First, as noted above, it is undisputed that Petitioner has been detained for over 505 days—well over the presumptive six month limit set forth in *Zadvydas*. Thus, the first factor weighs in Petitioner's favor. *See, e.g.*, *Villaescusa-Rios v. Choate*, No. 20-cv-03187-CMA, 2021 WL 269766, at *3 (D. Colo. Jan. 27, 2021) (collecting cases). Similarly, the second factor weighs in Petitioner's favor because the likely duration of future

detention is lengthy. She currently has two petitions for review pending before the Tenth Circuit. The Agency record has not been filed, and no briefing schedule has been set. She is likely to spend many more months—if not years—in detention while the Tenth Circuit adjudicates her case, and more beyond that if the Tenth Circuit remands for further proceedings. Thus, this factor weighs in her favor. *See Villaescusa-Rios*, 2021 WL 269766, at *3 ("While her 'detention will definitely terminate at some point, [ ] that point is likely to be many months or even years from now.' "(quoting *Singh*, 2019 WL 3943960, at *6).

Third, the Court considers the conditions of Petitioner's detention. This factor requires the Court to look to whether conditions of immigration detention are "meaningfully different" from penal institutions, and this factor favors the petitioner where respondents fail to explain how immigration detention "differ[s] from penal confinement." *See Singh v. Garland*, No. 21-CV-00715-CMA, 2021 WL 2290712, at *4 (D. Colo. June 4, 2021), *appeal dismissed* (Aug. 5, 2021). Petitioner represents that the conditions of her detention are poor and have exacerbated her physical and mental health complications. Moreover, courts in this District have found that conditions in the Aurora facility are not meaningfully different from criminal detention. *See id. at *4 (*finding conditions at the Aurora facility to be essentially equivalent to criminal incarceration)*; Singh,* 2019 WL 3943960, at *6 (same); *de Zarate v. Choate,* No. 23-CV-00571-PAB, 2023 WL 2574370, at *4 (D. Colo. Mar. 20, 2023) ("[C]ourts have concluded that [the Aurora facility] is enough like a corrections facility for this factor to favor" individuals subject to immigration detention) (citing *Daley*, 2023 WL 2336052, at *4). Thus, this factor also favors Petitioner.

15

The fourth and fifth factors look to delays caused by Petitioner and the government, respectively. As Respondents point out, Petitioner has caused certain delays by initiating withholding-only proceedings, seeking briefing extensions, and seeking stays of her removal. However, there is no indication that Petitioner engaged in improper dilatory tactics, and Courts have not held this factor against petitioners who have engaged in good faith efforts to obtain counsel and seek relief through all legal channels available against them, as Petitioner has done here. *See, e.g.*, *Juarez*, 2024 WL 1012912, at *7; *Villaescusa-Rios*, 2021 WL 269766, at *4; *Singh*, 2019 WL 3943960, at *6. At the same time, there is no indication that the Government is responsible for the delays in Petitioner's removal proceedings. Accordingly, the fourth and fifth factors are relatively neutral.

Finally, the Court considers the likelihood that removal proceedings will result in Petitioner's removal. Petitioner contends she "has a viable claim for relief under withholding of removal and protection under CAT based on her past persecution and torture, as well as evidence supporting her well-founded fear of future harm." ECF No. 1 at 27. On the other hand, Respondents argue "this factor favors the government because a final removal order already exists . . . . And, even if Petitioner is granted withholding-only relief, she still may be removed at any time to another country." ECF No. 10 at 14. The Court finds that this factor weighs slightly in Petitioner's favor given the BIA's recognition of the significant threat to transgender women in El Salvador, and the testimony of her past persecution and torture. *See Juarez*, 2024 WL 1012912, at * 7. Further, there was a dissent in her BIA appeal, wherein the dissenting Board member noted she would have reversed and remanded the IJ's decision, supporting that her claim

has at least some merit. Thus, the Court finds this factor slightly weighs in Petitioner's favor.

The Court finds that, on balance, the factors favor Petitioner. Accordingly, her continued detention requires an individualized bond hearing before an IJ in order to comport with due process.

### B. Bond Hearing

Having found that Petitioner is entitled to an individualized bond hearing, the Court next considers Petitioner's arguments regarding the burden of proof at that hearing. Petitioner asks for an individualized bond hearing where the government bears the burden of establishing by clear and convincing evidence that continued detention is justified. ECF No. 1 at 32-33. Respondents disagree, arguing that the burden should remain on Petitioner.

Respondents are correct that, on its face, § 1231 does not require the government to provide noncitizens with a bond hearing at all, let alone one in which the burden is allocated to the government. However, because Petitioner's "entitlement to a bond hearing in this case emanates from the Due Process Clause, not from the post-removal detention statute . . . the Court is persuaded that placing the burden of proof on the government comports with due process requirements." *Juarez*, 2024 WL 1012912, at *8 (citing *Cabrera Galdamez v. Mayorkas*, No. 22 Civ. 9847 (LGS), 2023 WL 1777310, at *8-9 (S.D.N.Y. Feb. 6, 2023); *Michelin v. Oddo,* No. 3:23-cv-22, 2023 WL 5044929, at *8 (W.D. Pa. Aug. 8, 2023); *Zavala*, 2022 WL 684147, at *6; *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 212–14 (3d Cir. 2020)). The Court agrees with the

17

Third Circuit's reasoning that "aliens facing 'prolonged detention' under § 1231(a)(6) are entitled to a bond hearing at which the Government must justify the alien's continued detention by clear and convincing evidence . . . [b]ecause the alien's potential loss of liberty is so severe . . . he should not have to share the risk of error equally." *Guerrero-Sanchez*, 905 F.3d at 224 & n.12. Thus, at the bond hearing, the government will bear the burden to show by clear and convincing evidence that continued detention is justified.

### C.  Remaining Requests for Relief

In addition to requesting the Court to order Respondents to show cause why the Petition should not be granted and for an individualized bond hearing—both of which have been granted—Petitioner also asks the Court for the following relief:

(1) Assume jurisdiction over this matter;

(2) Enjoin Respondents from transferring petitioner outside of the jurisdiction of the District of Colorado pending the resolution of this case;

(3) Issue a writ of habeas corpus directing Respondents to release Petitioner;

(4) Award Petitioner her costs and reasonable attorneys' fees under the Equal Access to Justice Act, as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and on any other basis justified under the law; and

(5) Grant further relief as this Court deems just and proper.

ECF No. 1 at 33. For the reasons set forth above, the Court assumes jurisdiction and denies as moot the second request and denies the third request, given the entry of this Order. As to her request for attorneys' fees, she must file a separate motion, *see* D.C.COLO.LCivR 7.1(d), for attorney fees supported by affidavit, *see* D.C.COLO.LCivR

54.3(a). As such, she may file a motion for attorney's fees that complies with the Local Rules.

## IV.  CONCLUSION

Consistent with the foregoing, the Court ORDERS as follows:

(1) Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, is DENIED IN PART and GRANTED IN PART;

(2) Petitioner's Motion for Temporary Restraining Order, ECF No. 2, is DENIED AS MOOT;

(3) On or before May 12, 2025, Respondents shall take Petitioner before an impartial adjudicator for a constitutionally adequate, individualized bond hearing, in which (1) DHS bears the burden of establishing by clear and convincing evidence that continued detention is justified; (2) the adjudicator is required to meaningfully consider alternatives to imprisonment such as community-based alternatives to detention including conditional release, parole, as well as Petitioner's ability to pay a bond; (3) the adjudicator may not give undue weight to allegations underlying dismissed criminal charges; (4) the adjudicator may not place undue weight on unauthenticated or antiquated documents regarding alleged criminal legal contacts; and (5) the adjudicator must take into consideration Petitioner's mental health diagnoses and trauma when considering criminal legal contacts.

DATED: May 5, 2025

BY THE COURT:

_____

REGINA M. RODRIGUEZ
United States District Judge